**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>) Case No. 12 CR 605<br>v. )<br>)<br>)<br>JOSE ARIAS-RODRIGUEZ ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendant Jose Arias-Rodriguez has moved for a judgment of acquittal, or, in the alternative, a new trial. For the reasons explained in detail below, the Court denies Defendant's motion.

**BACKGROUND**

On August 2, 2012, a grand jury returned an indictment again Jose Arias-Rodriguez charging him with two counts of illegally reentering the United States following deportation, in violation of 8 U.S.C. § 1326(a)(2). Count One of the Indictment charged Defendant with illegal re-entry on or about February 14, 2008, following deportation on November 25, 2002, and Count Two charged him with illegal re-entry on or about July 16, 2012, following the November 2002 deportation and a March 14, 2008 deportation.

Defendant proceeded to a jury trial. On September 10, 2014, the jury returned a verdict of guilty on both counts. Defendant now moves for a judgment of acquittal and a new trial.

# ANALYSIS

I.  **Defendant Is Not Entitled to a Judgment of Acquittal**

Defendant argues that he is entitled to a judgment of acquittal because the government failed to prove that Defendant was deported because no one testified that he observed Defendant crossing the border to Mexico. Because the government established this element beyond a reasonable doubt, Defendant's motion is denied.

   A.  **Legal Standard**

Rule 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When, as here, a defendant makes a Rule 29(a) motion at the close of the government's case, and the court reserves decision, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

"In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *see also United States v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013); *United States v. Berg,* 640 F.3d 239, 246 (7th Cir. 2011); *United States v. Dinga*, 609 F.3d 904, 907 (7th Cir. 2010); *United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "'must convince' the court that, even in that light, 'no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Warren*, 593 F.3d at 546 (quoting *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009)); *see also United States v. Eller*, 670 F.3d 762, 765 (7th Cir. 2012); *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010) (stating that the inquiry is "whether evidence

exists from which any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt"). In other words, a court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)); *see also Warren*, 593 F.3d at 546.

It follows that under Rule 29, courts "do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations." *United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009); *see also United States v. Severson*, 569 F.3d 683, 688 (7th Cir. 2009). This strict standard is recognition that "[s]orting the facts and inferences is a task for the jury." *Warren*, 593 F.3d at 547. The Seventh Circuit teaches that:

> [t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Moore*, 572 F.3d at 337 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

### B. The Evidence Was Sufficient to Prove Defendant Guilty

Defendant contends that the government failed to prove beyond a reasonable doubt that Defendant was deported from the United States to Mexico. In order to prove Defendant guilty of the crime of illegal reentry into the United States, the government had to prove the following elements: 1) Defendant was not a citizen or national of the United States; 2) Defendant had previously been deported and removed from the United States; 3) Defendant was found to be voluntarily in the United States; and 4) Defendant had not received express consent to apply for

3

readmission to the United States.  *See United States v. Rea-Beltran*, 457 F.3d 695, 702 (7th Cir. 2006).  Viewing the evidence in the light most favorable to the government, the government proved each of these elements beyond a reasonable doubt.

During the course of the trial, the government called the following witnesses: Felix Ramos, Immigration and Customs Enforcement ("ICE") Deportation Officer; Lorenzo Rivera, Department of Homeland Security ("DHS") Deportation Officer; Joseph Yeung, Sr. Atty, Office of Chief Counsel, ICE; Chalise Short, DHS Criminal Investigator; Kevin Smith, ICE Immigration Enforcement Agent; Ken Robinson, Supervisory Deputy, U.S. Marshal Service; and Dean Roan, DHS ICE Fingerprint Specialist.  Defendant Arias-Rodriguez also testified at trial.

Both Officer Ramos and Officer Rivera testified about the deportation process to Mexico.  The evidence established that ICE prepares warrants of deportation for deportees that contain a deportee's photograph and fingerprints.  The deportee is then typically transported to a border ICE facility and deported.

The government also introduced both the 2002 and 2008 warrants of deportation as to Defendant.  These warrants, which were prepared in the ordinary course of Defendant's deportation process, documented the time, place and manner of Defendant's removal in 2002 and 2008.  Defendant even admitted that his photograph was on both warrants of deportation.  The fingerprint expert testified that the fingerprints on both of these warrants of deportation match Defendant's fingerprints.

The deportation officer who was involved in creating each warrant testified that Defendant was placed on a secure flight from the ICE facility in Chicago to an ICE facility on the Mexican border.  Officer Rivera testified that he did two details at the Texas/Mexico border and it is the practice of ICE to escort all deportees at the border to a bridge and watch them

physically walk across the border into Mexico.  Viewing this evidence in the light most favorable to the government, it sufficiently established the element of deportation.  The government did not, as Defendant suggests, have to call a witness to testify that he observed Defendant leave the United States and go into Mexico.

Moreover, the government introduced an audio recording of Defendant at an immigration hearing before the immigration court.  During the hearing, Defendant admitted that he was not a citizen of the United States, that he was a citizen of Mexico, and that he wanted to go home to Mexico.  Defendant also told Agent Short that he was a citizen of Mexico.

In sum, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact easily could have found the essential elements of the crime beyond a reasonable doubt.

## II. Defendant Is Not Entitled to a New Trial

Defendant next claims that he is entitled to a new trial because the Court erred in 1) admitting the warrants of deportation from Defendant's "A-file," 2) sustaining the government's objection to Defendant's proposed elements jury instruction, and 3) denying Defendant's motion for a judgment of acquittal at the close of the government's case.  The Court will address each argument in turn.

### A. Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a); *see also Berg*, 714 F.3d at 500; *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012) (reviewing a district court's order on a Rule 33 motion for abuse of discretion); *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005).  "'[C]ourts

have interpreted [Rule 33] to require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.'" *United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)), *overruled on other grounds*, 546 U.S. 12, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005).

"'A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly.'" *Eberhart*, 388 F.3d at 1048 (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)). The court may grant a new trial if the jury's verdict is "so contrary to the weight of the evidence that a new trial is required in the interest of justice." *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("The focus in a motion for a new trial is not on whether the testimony is so incredible that it should have been excluded. Rather, the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses."); *see also United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011). Put another way, "[t]he court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (quoting *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)); *see also Presbitero*, 569 F.3d at 706.

### B. The Court Properly Admitted the A-File

Defendant argues that he is entitled to a new trial because the Court erroneously admitted certain documents at trial from Defendant's alien registration file ("A-file"). Defendant contends that his A-file was hearsay, violated his rights under the Confrontation Clause of the Sixth Amendment under *Crawford v. Washington*, 541 U.S. 36 (2004) and *Melendez-Diaz v.*

6

*Massachusetts*, 557 U.S. 305 (2009), and was inadmissible under Federal Rule of Evidence 403. In particular, Defendant focuses on the admission of his Warrants of Deportation from the A-file.

The Seventh Circuit addressed the admissibility of A-file documents in *United States v. Burgos*, 539 F.3d 641, 644-45 (7th Cir. 2008). It held that the A-file records at issue, including the warrant of deportation, were nontestimonial business records "not subject to the requirements of the Confrontation Clause under *Crawford*." *Id.* at 645. As the Seventh Circuit noted:

> A warrant of deportation records the movement of a deported alien; the signing witness attests to the alien's departure from the country. The warrant's primary purpose is to memorialize the deportation, not to prove facts in a potential future criminal prosecution.

*Id. See also United States v. Martinez-Sanchez*, 522 Fed.Appx. 355, 356-57 (7th Cir. 2013.)

*Melendez-Diaz* does not provide otherwise. In *Melendez-Diaz*, the Supreme Court addressed the admission of a forensic chemist's affidavits or "certificates of analysis" reporting the results of a forensic analysis of a seized substance. The "certificates of analysis" reported that the substance at issue was cocaine and gave the weight of the substance. The Supreme Court held that the admission of the certificates violated the defendant's Confrontation Clause rights because the certificates were testimonial statements and the defendant did not have the right to confront the person giving the testimony. Furthermore, the Court held that the certificates did not qualify under the business records exception to the hearsay rule because "the regularly conducted business activity is the production of evidence for use at trial." *Id*. at 321-22.

Here, unlike in *Melendez-Diaz*, the warrants of deportation were business records created at the time of Defendant's deportation to memorialize the deportations as part of ICE's administration of affairs, not as evidence for a subsequent criminal prosecution. They were not testimonial in nature. As the Supreme Court noted in *Melendez-Diaz*:

> Respondent also misunderstands the relationship between the business-and-official-records hearsay exceptions and the Confrontation Clause. As we stated

> in *Crawford:* "Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." 541 U.S., at 56, 124 S.Ct. 1354. Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.

*Id.* at 323-324. *See also United States v. Orzco-Acosta*, 607 F.3d 1156, 1163-64 (9th Cir. 2010) ("Unlike the certificates of analysis in *Melendez-Diaz,* neither a warrant of removal's sole purpose nor even its primary purpose is use at trial. A warrant of removal must be prepared in every case resulting in a final order of removal, *see* 8 C.F.R. § 241.2; *see also* 241.3, and nothing in the record or judicially noticeable suggests that more than a small fraction of these warrants ultimately are used in immigration prosecutions."). Accordingly, the Court properly admitted them into evidence.

### C. The Jury Instructions Were Proper

Defendant next claims that he is entitled to a new trial because the Court erred when it rejected his proposed elements instruction. Specifically, Defendant proposed an elements jury instruction for the Section 1326 offenses which included the following *mens rea* requirements: that Defendant knew he was not a citizen of the United States at the time, that Defendant knew he had previously been deported or removed from the United States, and that Defendant knew he had not received the consent of the proper legal authority to reenter the United States. (R. 55, Def.'s Proposed Instructions, at 2.) Because these proposed additions are not elements of the offense, the Court correctly rejected them.

The Seventh Circuit has made very clear that "[n]othing in [§ 1326's] language or background suggests that an illegally returning deportee cannot be convicted unless he knew he lacked the Attorney General's express consent to reenter." *United States v. Carlos-Colmenares*,

253 F.3d 276, 278 (7th Cir. 2001). The Seventh Circuit even noted that "[e]very one of the other nine circuits has . . . rejected [that position]." *Id.* It further expressly added, "we have concluded . . . that intent to reenter the country without the Attorney General's express consent is not an element of section 1326." *Id.* at 278; *see also United States v. Rea-Beltran*, 457 F.3d 695, 702 (7th Cir. 2006). Indeed, "the requirement that the Attorney General's consent be 'express' is a warning that the alien not try to infer consent from ambiguous circumstances." *Colmenares*, 253 F.3d at 277.

In addition, the Seventh Circuit also made it clear that a defendant's knowledge of being in the United States illegally is implied upon deportation because:

> [t]he statute is limited to persons who have previously been deported from the United States. They are persons who were in this country illegally, and obviously knew it when they were deported. "[D]eportation itself is sufficient to impress upon the mind of the deportee that return is forbidden. No one in that position could innocently assume that the INS is a travel agency. The statute simply, and logically, makes the presumption of unlawful intent conclusive."

*Colmenares*, 253 F.3d at 278 (quoting *United States v. Torres-Echavarria*, 129 F.3d 692, 698 (2d Cir. 1997)). As such, Defendant's argument fails.

### D. The Court Properly Denied Defendant's Motion for Judgment of Acquittal at the Close of the Government's Case

Defendant moved for a judgment of acquittal at the close of the government's case. The Court denied the motion. Defendant now argues that he is entitled to a new trial because the Court erred in denying that motion. For the reasons articulated above, Defendant's argument fails.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for a Judgment of Acquittal and Motion for a New Trial are denied.

Dated: November 21, 2014

ENTERED

_____
AMY J. ST. EVE
U.S. District Court Judge